

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-3713-A
Re: Is it mandatory that a
foreign corporation, with
a permit to transact busi-
ness in Texas, make, keep,
and maintain in Texas stock
transfer records.

Your letter of August 1, 1941, submits for our
opinion the following question:

"Your opinion No. O-3713 cites Article
10, Section 3, Constitution of Texas, in part,
as follows:

"'Sec. 3. Every railroad or other cor-
poration, organized or doing business in this
State under the laws or authority thereof,
shall have and maintain a public office or
place in this State for the transaction of
its business, where transfers of stock shall
be made, and where shall be kept for inspec-
tion by the stockholders of such corporations,
books, in which shall be recorded the amount
of capital stock subscribed, the names of the
owners of the stock the amounts owned by them
respectively, the amount of stock paid, and
by whom, the transfer of said stock, with the
date of the transfer, the amount of its as-
sets and liabilities, and the names and places
of residence of its officers. * * *.'

Honorable George H. Sheppard, Page 2

"You also cite Articles 1388, 1389, and 1384, Revised Civil Statutes.

"You state that it is mandatory that Texas Gulf Sulphur Company, a domestic corporation, make, keep, and maintain in Texas the stock transfer records and other records contemplated by the above constitutional and statutory provisions. Please tell me whether or not a foreign corporation with a permit to transact business in this state, shall make, keep, and maintain in Texas stock transfer records."

We shall first discuss the application of the constitutional provision, quoted above, to the question before us. No difficulty arises thereunder as to the description or nature of the corporate records required to be kept because the particular records inquired about, i.e. stock transfer records, fall squarely and literally within the express language of said constitutional provision. Nor is the place for the keeping of the required records put in issue by your question because it is clearly stated in such constitutional provision that such records shall be made and kept for inspection, at the corporation's "public office or place in this state for the transaction of its business." It is only the scope or coverage of the constitutional provision with which we are concerned; that is to say, does same apply to foreign corporations as well as to domestic corporations, and, if so, does it apply to all business or trading corporations or merely railroad corporations and similar transportation corporations. (Emphasis ours)

We think the language "organized or doing business in this state under the laws or authority thereof," descriptive of the "railroad or other corporation" sought to be covered by this provision, is sufficiently broad and comprehensive to include foreign corporations, "doing business" in Texas under the authority of a permit, duly issued under its laws, as well as domestic corporations, "organized," chartered and existing thereunder. Moreover, we find no language in the remaining portions of said constitutional provision limiting or narrowing the application thereof to domestic corporations.

(Emphasis ours)

Honorable George H. Sheppard, Page 3

This construction is consistent with established principles governing the making and keeping within a state of certain books and records, including stock transfer records, of corporations, both domestic and foreign. It is unquestioned in all jurisdictions that it is incumbent upon a private corporation organized under the laws of a state to have its place of business, and to keep its books therein, to an extent necessary to the fullest jurisdiction and visitatorial power of the state and its courts. Most states have statutes upon the subject, as does Texas, but this has been held to be a common law obligation, existing independent of statute. 18 C.J.S., 611 (Corporations, Sec. 191D); State vs. Park, et al Lumber Co., 89 N. W., 1048; Simmons vs. Norfolk and B. Steamboat Co., 15 S. E. 117.

Of course, the same jurisdictional and visitatorial powers are not inherent in the State of Texas over foreign corporations as over domestic corporations, either under the common law, or under pertinent constitutional and statutory provisions. For instance, the constitutional and statutory provisions involved in this discussion do not and cannot govern the purely internal affairs of a foreign corporation. The fact that a foreign corporation is engaged in business in, and owns property within the state, and is within the jurisdiction of its courts, does not also subject it to legislation purporting to regulate the exercise of the inherent corporate powers conferred upon it by the legislative policy of the incorporating state. 20 C.J.S. 25-26 (Corporations, Secs. 1807), In Re: Fryeburg Water Co., 106 Atlantic, 825; Southern Sierras Power Co. vs. Railroad Commission of California, 271 Pac., 747; Man vs. Montana Pacific Oil Co., 141 Atl. 818.

Examples of the internal affairs of a foreign corporation, somewhat germane to the instant discussion, which have been held to be governed by the state of incorporation rather than the state where such corporation is doing business, under the regulatory laws of such state, are its rights in the issuance of a particular type and amount of stock, (see authorities next supra), and, generally, the transfer of such stock. 18 C.J.S., 940; (Corporations, Sec. 599), United Cigarette Machine Co. vs. Canadian Pacific Railway Co., 12 Fed. (2d) 634; Hunt vs. Drug Inc., 156 Atl. 384.

But it should be directly pointed out at this juncture that the constitutional provision under consideration does not, either from its express terms or necessary implication, attempt or intend to govern or regulate the subscription to or issuance of capital stock of a foreign corporation, or the transfer thereof, but merely requires that such stock transactions, either as to original issuance or subsequent transfer, shall be recorded or reflected in appropriate books and records kept and maintained within the confines of the state of Texas. Thus construed, this section of the Texas Constitution does not run afoul of the foregoing principles and authorities but rather falls squarely within the recognized limitation thereto, that, consistent with constitutional principles, a State may regulate, even to the extent of prohibition, the rights of a foreign corporation to do business within such state. See, generally, 20 C.J.S., pp. 30- et seq. Constitutional and statutory provisions of other states, similar in operation and effect to the constitutional provision now under consideration, and requiring foreign corporations doing business within a state to keep certain designated books and records within the state and to permit inspection thereof by stockholders, have been upheld in numerous decisions as not being an unlawful interference with internal management. 20 C.J.S. 41; (Corporations, sec. 1820), and cases cited.

We accordingly conclude that section 5, Article 10, Constitution of Texas, requires the named corporations, foreign as well as domestic, to keep and maintain the described records; and that such requirement is not an unlawful regulation of the internal affairs of a foreign corporation but may be sustained under principles above discussed, as a proper and constitutional regulation of a foreign corporation doing business in Texas and as a condition prerequisite thereto.

We must next determine just what corporations, domestic or foreign, are within the letter or the intendment of this constitutional requirement. Under the familiar rule of ejusdem generis, applicable in Texas to both constitutional and statutory interpretations, we narrow and delimit the scope of our holding to apply only to such corporations, either domestic or foreign, as are of the same class, character or species as the corporation specifically named, i.e. a railroad corporation. The language "every railroad or <u>other corporation</u> . . . . . shall have and maintain." etc., requires,

Honorable George H. Sheppard, Page 5

under this rule of construction, the interpretation that the "other corporation" intended to be reached by the constitution framers was a corporation similar to the one specifically named, that is, one engaged in the business of transporting persons or property for hire, rather than a general business or trading corporation, organized or doing business within the State.  San Antonio Independent School District vs. State, 173 S.W., 525; National Bank vs. Hanks, 104 Tex., 320; 137 S.W. 1120; 59 Corp. Jur., 961.

Having determined the limited type of foreign corporation required to comply with the provisions of Section 3, Article 10, Constitution of Texas, prescribing the making and keeping of certain stock records, we next pass to a consideration of whether or not foreign corporations, generally, doing business in Texas under a permit duly issued, are required to comply with the provisions of Articles 1328, Vernon's Texas Civil Statutes, providing as follows:

"Art. 1328.  Records.--They (the directors) shall cause a record to be kept of all stock subscribed and transferred, and of all business transactions.  Their books and records shall at all reasonable times be open to the inspection of any stockholder."  (Parenthesis ours)

We have little doubt, under the principles hereinabove discussed, that the legislature could have lawfully passed the foregoing statute to include and cover foreign corporations, by express language to this effect.  But not having done this directly, the question is, has the legislature accomplished this by intendment.  The applicability to foreign corporations of the term "corporation" as used in statutes, depends on the subject matter of the statute, its policy, the context in which the term is used, and the apparent intent of the statute; 20 C.J.S., 25-30 (Corporations, Secs. 1808, 1809).

The Article under consideration is found under Title 32, Chapter 3, Vernon's Texas Civil Statutes, embracing general provisions governing private corporations, setting forth their powers and duties.  Considering the above statute in connection with other statutes, in pari materii, contained

Honorable George H. Sheppard, Page 6

in said Chapter and Title, it is apparent that the Legislature of Texas was regulating the general duties and powers of private domestic corporations and their governing bodies, rather than foreign corporations. As examples of such other statutes we point to Articles 1354 and 1356, Vernon's Texas Civil Statutes, providing as follows:

"Art. 1354. The stock of any corporation created under this Title shall be deemed personal estate and shall be transferable only on the books of the corporation in such manner as the by-laws may prescribe. Every shareholder in the corporation shall be entitled to have a certificate or certificates representing the number of shares owned by him signed by such officer or officers as the by-laws shall prescribe and bearing the corporate seal; but the signatures of such officers and the seal of the corporation upon such certificates may be facsimiles, engraved or printed, where such certificate is signed by a duly authorized transfer agent and a registrar, and the fact that at the time of actual issue any officer whose name appears on such certificate shall have ceased to be such officer shall not invalidate the signature or certificate. This Act shall not be construed to affect the validity of any stock certificates heretofore issued and signed or sealed by the facsimile seal or signature adopted by such corporation. As amended Acts 1939, 46th Leg., p. 154, 1.

"Art. 1356. Principal office. --Each corporation or joint stock company of every description, whether organized and acting under a special charter or general law of this State, shall keep its principal office within this State. (Acts 1905, p. 230.)" (Emphasis ours)

In this connection, we think the following language from the case of Banderpoel vs. Gorman, 35 N.E., 932, is most apt:

Honorable George H. Sheppard, Page 7

"The sole question now is as to what has been the legislative action of this state upon this subject. The defendant alleges that there is a statute of this state which prohibits such act on the part of a foreign corporation. The statute referred to is chapter 564, §48, Laws 1890, (Sess. Laws, p. 1075.) It is, in substance, the same as section 4, tit. 4, art. 3, c. 18, pt. 1, Rev. St. (1 Rev. St. p. 603 §4,) after its amendment by subdivision 4, §1, c.245, Laws 1880. It provides, among other things, that no corporation shall make any transfer or assignment to any person whatever, in contemplation of its insolvency, and every such assignment is declared to be void. We have no doubt that this section refers solely to domestic corporations. The whole of the chapter from which the section is taken is, in substance, a revision of the law relating to certain classes of corporations, as contained in the Revised statutes and their amendments, and it is plain that those statutes generally, if not in every provision, referred to domestic corporations only. This opinion is arrived at by a reference to the whole subject-matter treated of in this portion of the Revised statutes, and it becomes apparent, from a perusal of those general provisions, that the statutes were designed for the government and regulation of corporations created by this state. When the language used in the particular section is referred to, it becomes still more apparent that it is only applicable to domestic corporations. The legislature declares, as above stated, that certain transfers or assignments made by the corporation shall be void. What power had the legislature to enact any such provision as to a foreign corporation? There is nothing in the section limiting its scope and effect to such property as the foreign corporation might have within this state. It is a broad enactment, affecting every assignment made by a corporation under the circumstances mentioned. Can it be supposed that the legislature had in mind a foreign corporation, and intended to assume a jurisdiction to declare such an act, even when done outside this state, and

in respect to property also outside of its
boundaries, to be void and of no effect?
This cannot be supposed, for we cannot im-
pute to the legislature such ignorance upon
the subject of its inability to give extra-
territorial effect to its own laws. And if
it had foreign corporations in mind, when
proposing to legislate upon the subject, and
knew it would not affect the validity of such
transfers outside this state, and intended to
provide that such transfers should not carry
the title to property of the corporation held
within this state, and subject to our jurisdic-
tion, it must be clear that language somewhat
appropriate to express such purpose would have
been used. The language actually used was
neither apt nor pertinent for this purpose.
It is both appropriate and pertinent when ap-
plied to domestic corporations only. . . ."

It has been generally stated that a statute of a
state, granting powers and privileges to corporations, must,
in the absence of plain indications to the contrary, be held
to apply only to corporations created by the state, and over
which it has the power of visitation and control. Such is
the natural interpretation of such legislation, in the ab-
sence of contrary intention appearing on the face of the act.
The law, in such cases, is dealing with its own creations,
whose rights and obligations it may limit, define, and control.
In re, Primes Estate, 32 N.E. 1091; Muck vs. Hitchcock, et al.,
106 N.E. 75; Application of Ostrander, 201 N.Y.S. 485; Vander-
poel vs. Gorman, 33 N.E., 93R; In re, Balleis Estate, 59 N.E.
1007; Saltmarsh vs. Spaulding, 17 N.E.; 316; In re, Heffron Co.,
216 Fed. 642; Alfred University vs. Hancock, 46 Atl., 178.

In the case of Saltmarsh vs. Spaulding, supra, it
was held that a statute of Massachusetts, requiring a vote of
the stockholders of a corporation to authorize a conveyance of
its real estate, did not apply to a conveyance of Massachusetts
real estate by a foreign corporation.

In the case of Application of Ostrander, supra, a
statute authorizing proceedings to compel a corporation to
issue new certificates of stock for lost certificates, was
held not to apply to foreign corporations but to be consti-
tutional as applied to domestic corporations only.

Honorable George H. Sheppard, Page 9

We quote from the case of Musk vs. Hitchcock, supra, as follows:

"(1) Section 12 of the Religious Corporations Law (Consol. Laws, c. 51), provides as follows:

"'Sec. 12. A religious corporation shall not sell or mortgage any of its real property without applying for and obtaining leave of the court therefor pursuant to the provisions of the code of Civil Procedure.' etc.

"It has been held that broad words in a statute conferring powers and privileges on 'a corporation,' or on 'any corporation,' apply only to corporations organized under the laws of this state. 'The Legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define, and control.' Matter of Baillais, 144 N.Y. 132, 135, 38 N.E. 1007, 1008; White v. Howard, 46 N.Y. 144, 165; Colquhoun v. Hedden, L.R. (25 Q.B.D.) 129; Saltmarsh v. Spaulding, 147 Mass. 224, 17 N.E. 316; United States v. Fox, 94 U.S. 315, 24 L. Ed. 192; Alfred University v. Hancock, 69 N.J. Eq. 470, 46 Atl. 178; Vanderpoel v. Gorman, 140 N.Y. 563, 35 N.E. 932, 34 L.R.A. 548, 37 Am. St. Rep. 601.

"In my opinion the words of section 12 of the Religious Corporations Law should be limited in like manner to domestic corporations. The object of the state in requiring a religious corporation to obtain leave of the court before conveying its real property is to protect the society and its members from loss through unwise bargains, and to prevent perversion of the association's property. The state owes no service of that kind to foreign corporations. Indeed, it would be impracticable for the courts of this state to exercise such visitorial power over a foreign corporation. Our courts do

not know the needs of the foreign association,
and they cannot determine with any satisfac-
tion, as the statute requires (General Corpora-
tion Law (Consol. Laws, c. 23), § 73), whether
the interests of the association will be pro-
moted by the sale of its land in this state
or not, nor can they, with any satisfaction,
direct what disposition shall be made of the
proceeds of sale. Furthermore, after the sale,
the courts of this state would in most cases
lose jurisdiction of the foreign corporation
and its property. The power of visitation
over foreign corporations can be exercised
effectually only by the courts of the asso-
ciation's domicile. For these reasons, I
think it should be said that the law of this
state prohibiting religious corporations from
selling their real property without leave of
the court, does not extend to foreign corpora-
tions."

In summation, Article 1328, Vernon's Texas Civil
Statutes, requiring the directors of corporations to keep,
open for inspection, stock records and stock transfer records,
does not, on its face, and in express terms, embrace foreign
corporations; and considering the context of such statute,
its relation to other statutes enacted at the same time, clear-
ly regulating private domestic corporations only, the public
policy of the state to be served, and the absurd consequences
which would flow from a contrary ruling, we are constrained
to hold that it was the legislative intent and purpose that
only domestic corporations would be required to comply with
the conditions and keep the records therein indicated.

It should be pointed out that this conclusion is
independent of and without affect upon our ruling herein-
above given regarding the scope and application of Section 3,
Article 10, Constitution of Texas, requiring the keeping of
certain stock and transfer records of every railroad and every
similar corporation, domestic or foreign. The language of
this constitutional provision, by necessary implication, em-
braces certain foreign corporations, doing business in Texas,
within its scope while that of the statute does not; the

Honorable George H. Sheppard, Page 11

former is limited to certain types of corporations, domestic and foreign, while the latter is manifestly designed only to include all domestic trading or business corporations within its terms. Hence, we submit that these apparently divergent views are, on close analysis, consistent and tenable.

It is recognized that this opinion regarding the limited application of Section 3, Article 10, Constitution of Texas, to railroads and other corporations of the same nature and character, necessarily modifies the reasoning upon which our Opinion No. O-3713 is, in part, grounded; but it does not modify or alter our conclusion reached therein because same finds independent support in the plain terms of Articles 1529, Vernon's Texas Civil Statutes, referred to and discussed in said opinion.

Trusting the foregoing fully answers your inquiry, we are

APPROVED DEC 2, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Pat M. Neff, Jr.
Assistant

PMN:ff



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN